**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **Commodity Futures Trading Commission,**<br>**Plaintiff,**<br><br>**vs.**<br><br>**Raleigh Capital Management, Inc., and**<br>**Richmond H. Hamilton, Jr.,**<br>**Defendants,**<br><br>**and**<br><br>**Raleigh Fund, LP.,**<br>**Relief Defendant.** | **Civil Action No:**<br><br>**Judge** |

**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF**
**AND PENALTIES UNDER THE COMMODITY EXCHANGE ACT**

**I.    SUMMARY**

1.    Defendants Raleigh Capital Management, Inc. ("RCM") and its sole principal, Richmond H. Hamilton, Jr. ("Hamilton"), who manage the relief defendant Raleigh Fund, LP ("Fund" or "Relief Defendant"), a commodity pool, have engaged, are engaging, and are about to engage in acts and practices that have defrauded pool participants. Through various devices, Hamilton and RCM ("Defendants") have misappropriated over $1 million from participants in the Fund since May 2004. Additionally, Hamilton has made a false statement to pool participants that interest was being paid on certain personal loans made to him from the Fund, when, in fact, he had not made any interest payments for at least six months prior. Hamilton further failed to disclose that he had not made a payment on the principal of those loans for over a year.

2.     In June 2009, the National Futures Association ("NFA") initiated an audit of

RCM and the Fund.  Hamilton provided the NFA with documents representing three sham real

estate transactions he claimed to have entered into with the Fund.  Additionally, Hamilton

misrepresented, among other things, the extent of his personal bank accounts, restrictions he

imposed on pool participant's requests for return of their interests in the Raleigh Fund, and his

payment of operating expenses for the Fund.

3.     By virtue of this conduct and the conduct further described herein, RCM and

Hamilton (collectively "Defendants") have engaged in conduct in violation of Sections

4b(a)(1)(i) and (iii), 4o(1)(A) and (B) and 9(a)(4) of the Commodity Exchange Act ("Act"),

7 U.S.C. §§ 6b(a)(1)(i) and (iii), 6o(1)(A) and (B) and 13(a)(4) (2006), and Sections 4b(a)(1)(A)

and (C) of the Act, as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No.

110-246, Title XIII (subtitled "CFTC Reauthorization Act of 2008" ("CRA")), §§ 13102, 122

Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C).

4.     Accordingly, the Commodity Futures Trading Commission ("CFTC" or

"Commission") brings this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), to

enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act.  In

addition, the CFTC seeks restitution, civil monetary penalties and such other equitable relief as

this Court may deem necessary or appropriate.

5.     Unless restrained and enjoined by this Court, Defendants are likely to engage in

the acts and practices alleged in this complaint, or in similar acts and practices as described more

fully below.

6.     Relief Defendant Raleigh Fund, L.P.is a relief defendant whose liability is limited

to the disgorgement of funds and assets received as a result of defendants RCM's and Hamilton's

fraud and misappropriation.  As a relief defendant, the Fund holds pool participants' funds and

assets in constructive trust for the participants.  Accordingly, plaintiff seeks an order of

disgorgement against the Fund of all assets and funds that are traceable to the Defendants'

unlawful activities.

## II.     JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to Section 6c of the Act,

7 U.S.C. § 13a-1 (2006).  Section 6c of the Act authorizes the CFTC to seek injunctive relief

against any person whenever it shall appear to the CFTC that such person has engaged, is

engaging, or is about to engage in any act or practice constituting a violation of any provision of

the Act or any rule, regulation or order promulgated thereunder.

8.      Venue properly lies with this Court pursuant to Section 6(c)(e) of the Act,

7 U.S.C. § 13a-1(e) (2006), because the Defendant RCM resides in this jurisdiction and the acts

and practices in violation of the Act have occurred, are occurring or are about to occur within

this District.

## III.    THE PARTIES

9.      Plaintiff **Commodity Futures Trading Commission** is an independent federal

regulatory agency that is charged by Congress with administering and enforcing the Act,

7 U.S.C. §§ 1 *et. seq.*, and the regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et. seq.*

(2009).

10.     Defendant **Raleigh Capital Management, Inc.** is an Illinois corporation and the

general partner of **The Raleigh Fund L.P.**  RCM conducts business at 1747 North Cleveland,

Chicago, IL 60614.  RCM trades commodity futures as part of its various investment activities

on behalf of the Fund.  RCM is registered with the Commission as a commodity pool operator ("CPO").

11.     Defendant **Richmond H. Hamilton, Jr.** is the sole principal of RCM and is responsible for all facets of RCM's operations.  Hamilton resides at 8 Rue Descartes, Rabat – Les Oranges 10000, Morocco.  Hamilton conducts business at 1747 North Cleveland, Chicago, IL 60614.  Hamilton is registered with the Commission as an associated person ("AP") of RCM.

12.     **Raleigh Fund, LP** is a commodity pool.  It was organized in 1987 by Hamilton. RCM is the sole general partner of the Fund, and Hamilton is the sole principal of RCM.

## IV.     OTHER RELEVANT ENTITY

13.     The **National Futures Association** is a registered futures association designated as such under Section 17 of the Act, 7 U.S.C. § 21.

## V.     STATUTORY BACKGROUND

14.     A "commodity pool" is defined in Commission Regulation 4.10(d)(1), 17 C.F.R. § 4.10(d)(1) (2009), as any investment trust, syndicate or similar form of enterprise engaged in the business of investing its pooled funds in trading commodity futures and/or commodity options.

15.     A CPO is defined in Section 1a(5) of the Act, 7 U.S.C. § 1(a)(5) (2006), as any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market.

16.     An AP of a CPO is defined in Commission Regulation 1.3(aa)(3), 17 C.F.R.§ 1.3(aa)(3) (2009), as a natural person associated with a CPO "as a partner, officer,

employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves (i) the solicitation of funds, securities, or property for a participation in a commodity pool or (ii) the supervision of any person or persons so engaged."

17.     A "participant" is defined in Commission Regulation 4.10(c), 17 C.F.R. § 4.10(c) (2009), as any person who has any direct financial interest in a commodity pool.

## VI.     THE FRAUDULENT SCHEME

18.     In or about 1987, Hamilton and others formed the Fund, which has invested in, among other things, commodity futures contracts and options on commodity futures contracts on or subject to the rules of certain designated contract markets, including the New York Mercantile Exchange among others.  As of December 2008, the Fund had approximately 28 participants, and $8.3 million under management.

19.     Participants in the Fund are limited partners or subscribers and obtain "units" of limited partnership interests in exchange for cash pursuant to the Fund's Limited Partnership Agreement ("LPA").  Participants are also given a Confidential Private Placement Memorandum ("CPPM"), which purports to describe the operation of the Fund.

20.     Under the terms of the LPA and the CPPM, the only payments by the Fund to RCM that are authorized are a "Management Fee" equal to $1/6^{th}$ of 1% of the month end net asset value of each unit, and a Performance Allocation equal to 10% of any cumulative increase in the net asset value of each unit over the previous month end.  RCM is obligated to pay all of the partnership's ordinary operating expenses, including legal accounting, auditing and bookkeeping fees.  The Fund is obligated for payment of the Management Fee and any extraordinary expenses.

### A.      Misappropriation

21.      Between May 2004 and the present, Hamilton has misappropriated more than

$575,000 from the Fund.  Specifically, between May and August 2004, Hamilton made a series

of unauthorized transfers from the Fund to his personal bank account via the mails or interstate

wires.  The total amount of these transfers was $275,000.  Hamilton caused these transfers to be

recorded as a personal loan from the Fund to Hamilton.

22.      Additionally, between January 2005 and the present, Hamilton caused the Fund to

make more than $300,000 in unauthorized payments to RCM.  Hamilton caused these payments

to be recorded as "advanced management fees."

23.      Hamilton used the unauthorized payments to RCM to pay for his own personal

expenses.  Hamilton caused RCM to pay numerous bills using the Fund's assets, which inured to

Hamilton's personal benefit and not to the benefit of the Fund.  For example, Hamilton caused

RCM to make monthly payments for expenses related to the purchase and maintenance of an

airplane.  Hamilton also caused the Fund to pay for the lease of a car located here in the United

States, even though he resides in Morocco.  In an email on or about July 24, 2009, from

Hamilton to three other people, Hamilton admitted that he instructed the Fund's accountant to

book transfers of money from the Fund to RCM when he "overspent" funds from RCM.

24.      In June 2009, Hamilton caused the Fund to pay him $430,000 by wire transfers,

purportedly for interests in real estate.  Hamilton was not entitled to these funds.

### B.      Misrepresentations and Omissions to Pool Participants

25.      Under the terms of the Fund's CPPM, RCM or Hamilton may receive loans from

the Fund provided that the proceeds of the loan are reinvested in the Fund in the form of

purchases of units of limited partnership. Additionally, the recipient of any such loan must pay interest to the Fund at a competitive rate.

26.     Hamilton has lent himself more than $1 million from the Fund since December 2000. These loans were made at interest rates of between 1% and 3%. These loans were effectuated through the mails or interstate wires.

27.     As of April 30, 2009, the outstanding balance on these loans was over $790,000, including the $275,000 that Hamilton misappropriated as referenced in paragraph 20.

28.     Hamilton caused the Fund to issue an annual report for activities up to and including December 31, 2008. In the annual report, Hamilton represented that "[i]nterest income is accrued monthly and paid by Mr. Hamilton on the balance in the [loan] account at a rate of 1% per annum." Hamilton caused this report to be sent via the mails or interstate wires.

29.     Hamilton has failed to make any interest payments on these loans since August 2008.

30.     Hamilton failed to disclose that he has not made a payment on the outstanding principal of these loans since January 2008.

### VII.    HAMILTON'S FALSE STATEMENTS TO NFA

31.     On or about June 2, 2009, the NFA initiated an audit of the Fund. The audit was being performed in furtherance of the NFA's official duties under the Act.

32.     Shortly after the NFA initiated its audit, Hamilton misappropriated $430,000 from the Fund as described in paragraph 23 above. When the NFA sought details relating to payments, Hamilton provided the NFA with sham documents purporting to show sales by him to the Fund, including executed real estate contracts, notarized warranty deeds, and an indemnity agreement. In fact, no real estate was sold by Hamilton to the Fund.

33.     As part of that audit, the NFA sought information relating to redemptions by participants in the Fund.  In a conversation on June 3, 2009, Hamilton represented to NFA staff that he had not placed any restrictions on redemptions.  In fact, he had sent an e-mail to at least one participant in February 2009 in which he stated that he would restrict redemptions to all participants.  Additionally, at least one other participant had sought since January 2008 to make a partial redemption, which Hamilton refused to honor.

34.     Hamilton has repeatedly represented to the NFA that he has been paying administrative costs for the Fund personally.  For example, in relation to expenses for accounting fees, he stated in an e-mail to NFA auditors on June 18, 2009 that "I have always paid all these fees personally.  All expenses of the Fund except in very exceptional circumstances. [*sic*]  It has been quite a burden on me during periods of poor performance."  In fact, RCM paid the Fund's ordinary expenses, including accounting fees.

35.     Hamilton failed to disclose a personal bank account at a bank in Morocco in response to the NFA's request for identification of all personal bank accounts.  This is the same bank account to which he wired the proceeds of the self-dealing real estate transactions to in June 2009 as described in paragraph 23 above.  Additionally, once this account was discovered by the NFA, he failed to promptly provide documentation regarding this account to the NFA, despite repeated requests.

## VIII.   VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT ONE

**Violations of Section 4b(a)(1)(i) and (iii) of the Act and
Section 4b(a)(1)(A) and (C) of the Act as amended by the CRA:
Fraud by Misappropriation, Misrepresentation and Omissions**

36.     Paragraphs 1 through 35 are realleged and incorporated herein by reference.

8

37.     Prior to being amended by the CRA, Sections 4b(a)(1)(i) and (iii) of the Act,

7 U.S.C. §§ 6b(a)(1)(i) and (iii) (2006), made it unlawful for any person to (i) cheat or defraud or

attempt to cheat or defraud; or (iii) willfully deceive or attempt to deceive by any means

whatsoever other persons in or in connection with orders to make, or the making of, contracts of

sale of commodities, for future delivery, made, or to be made, for or on behalf of such other

persons where such contracts for future delivery were or may have been used for (a) hedging any

transaction in interstate commerce in such commodity, or the produce or byproducts thereof, or

(b) determining the price basis of any transaction in interstate commerce in such commodity, or

(c) delivering any such commodity sold, shipped or received in interstate commerce for the

fulfillment thereof.

38.     Similarly, Sections 4b(a)(1)(A) and (C) of the Act as amended by the CRA, to be

codified at 7 U.S.C. §§ 6b(a)(1)(A) and (B), prohibits any person, in or in connection with any

order to make, or the making of, any contract of sale of any commodity in interstate commerce

or for future delivery that is made, or to be made, on or subject to the rules of a designated

contract market, for or on behalf of any person (A) to cheat or defraud or attempt to cheat or

defraud the other person; or (C) willfully to deceive or attempt to deceive the other person by

any means whatsoever in regard to any other or contract or the disposition or execution of any

order or contract, or in regard to any act of agency performed, with respect to any order or

contract for the other person.

39.     As set forth above, in or in connection with futures contracts, made, or to be

made, for or on behalf of other persons, Defendants cheated, defrauded or attempted to cheat or

defraud Fund participants by, among other things, misappropriating cash from the Fund, falsely

40.     Defendants engaged in the acts and practices described above willfully, knowingly or with reckless disregard for the truth.

41.     By this conduct before June 18, 2008, Defendants violated Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006), and with respect to acts on or after June 18, 2008, Sections 4b(a)(1)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C).

42.     The foregoing acts, misrepresentations, omissions, and failures of Hamilton occurred within the scope of his employment with RCM; therefore, RCM is liable for these acts in violation of the Act, as alleged in this count, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2009).

43.     Each misappropriation of funds and each misrepresentation or omission of material fact, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii), with respect to acts before June 18, 2008, and violation of Sections 4b(a)(1)(A)-(C) of the Act as amended by the CRA, to be codified at 7 U.S.C. § 6b(a)(1)(A)-(C), with respect to acts on or after June 18, 2008.

## COUNT TWO

### Violations of Section 4*o*(1)(A) and (B) of the Act:
### Fraud by a CPO and AP of a CPO

44.     Paragraphs 1 through 35 are realleged and incorporated herein by reference.

45.     Section 4*o*(1) of the Act, in relevant part, prohibits a CPO or an AP of a CPO by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly

(A) to employ any device scheme or artifice to defraud any participant; or (B) to engage in any transaction, practice or course of business that operates as a fraud or deceit upon any participant.

46.     As set forth above, Hamilton and RCM cheated, defrauded or attempted to cheat or defraud Fund participants by, among other things, misappropriating cash from the Fund, falsely stating that he was paying interest on personal loans from the Fund on a monthly basis, failing to disclose that he was had not made a payment on the principal for over a year, and failing to disclose to participants that he engaged in certain self-dealing real estate transactions between the Fund and himself or the risks associated with those transactions, all in violation of Sections 4$o$(1)(A) and (B) of the Act, 7 U.S.C. §§ 6$o$(1)(A) and (B) (2006).

47.     Defendants engaged in the acts and practices described above willfully, knowingly or with reckless disregard for the truth.

48.     The foregoing acts, misrepresentations, omissions, and failures of Hamilton occurred within the scope of his employment with RCM; therefore, RCM is liable for these acts in violation of the Act, as alleged in this count, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2009).

49.     Each misappropriation of funds and each misrepresentation or omission of material fact, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4$o$(1)(A) and (B) of the Act, 7 U.S.C. §§ 6$o$(1)(A) and (B) (2006).

## COUNT THREE

### Violations of Section 9(a)(4) of the Act:
### False Statements to the National Futures Association

50.     Paragraphs 1 through 35 are realleged and incorporated herein.

51.     Section 9(a)(4) of the Act, in relevant part, prohibits any person willfully to falsify, conceal or cover up by any trick, scheme or artifice a material fact, make any false, fictitious or fraudulent statements or representations, or make or use any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry to a futures association designated or registered under the Act that was acting in furtherance of its official duties under the Act.

52.     As set forth above, Hamilton willfully misrepresented to the NFA that he had sold property to the Fund, his activities in connection with restrictions on redemptions by participants, his payment of expenses for the Fund, and the extent of his personal bank accounts, all in violation of Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4) (2006).

53.     The foregoing acts, misrepresentations, and willful concealment of Hamilton occurred within the scope of his employment with RCM; therefore, RCM is liable for these acts in violation of Act, as set forth in this count, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2009).

54.     Each false, fictitious, or fraudulent statement, representation or omission made to the NFA between June 2, 2009 up to and including the present by Hamilton, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4) (2006).

## IX.     RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), and pursuant to its own equitable powers:

A.      Find Defendants liable for violating: Sections 4b(a)(1)(i) and (iii), 4*o*(1)(A) and (B), and 9(a)(4) of the Act, 7 U.S.C. §§ 6b(a)(1)(i) and (iii), 6*o*(1)(A) and (B), and 13(a)(4)

(2006); and Sections 4b(a)(1)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C);

B.       Enter an *ex parte* statutory restraining order and an order of preliminary injunction pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1 (2006), restraining Defendants and Relief Defendant and all persons insofar as they are acting in the capacity of Defendants' and/or Relief Defendant's agents, servants, successors, employees, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with them who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

1.       Destroying, mutilating, concealing, altering or disposing of any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants and/or Relief Defendant, wherever located, including all such records concerning Defendants' and/or Relief Defendants' business operations;

2.       Refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records or other property of Defendants and/or Relief Defendant, wherever located, including all such records concerning Defendants' and/or Relief Defendant's business operations;

3.       Withdrawing, transferring, removing, dissipating, concealing or disposing of, in any manner, any funds, assets, or other property belonging to or within the custody, control or actual or constructive possession of the Defendants and/or Relief Defendant, wherever situated, including but not limited to, all funds, personal property, money or

securities held in safes, safety deposit boxes and all funds on deposit in any financial

institution, bank or savings and loan;

C.       Enter an order directing that Defendants make an accounting to the Court of all of

Defendants' assets and liabilities, together with all funds Defendants and Relief Defendant

received from and paid to pool participants and other persons in connection with commodity

futures and options transactions or purported commodity futures and options transactions,

including the names, mailing addresses, email addresses and telephone numbers of any such

persons from whom they received such funds from May 1, 2004 to the date of such accounting,

and all disbursements for any purpose whatsoever of funds received from pool participants,

including salaries, commissions, fees, loans and other disbursements of money and property of

any kind, from January 1, 2006 to and including the date of such accounting;

D.       Enter an order requiring Defendants and Relief Defendant immediately to identify

and provide an accounting for all assets and property that they currently maintain outside the

United States, including, but not limited to, all funds on deposit in any financial institution,

futures commission merchant, bank, or savings and loan accounts held by, under the actual or

constructive control of, or in the name of Hamilton and/or RCM, whether jointly or otherwise,

and requiring them to repatriate all funds held in such accounts by paying them to the Clerk of

the Court, or as otherwise ordered by the Court, for further disposition in this case.

E.       Enter orders of preliminary and permanent injunction enjoining Defendants and

all persons insofar as they are acting in the capacity of their agents, servants, employees,

successors, assigns, and attorneys, and all persons insofar as they are acting in active concert or

participation with Defendants who receive actual notice of such order by personal service or

otherwise, from directly or indirectly:

1.      Engaging in conduct in violation of Sections 4*o*(1)(A) and (B), and/or 9(a)(4) of the Act, 7 U.S.C. §§ 6*o* (1)(A) and (B), and/or 13(a)(4) (2006), and/or Sections 4b(a)(1)(A) and (C) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C);

2.      Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006);

3.      entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Commission Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2009)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act as amended by the CRA, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for their own personal account or for any account in which they have a direct or indirect interest;

4.      having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on their behalf;

5.      controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

6.      soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

7.      applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or

exemption from registration with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009);

8.      acting as a principal (as that term is defined in Commission Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2009)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009);

F.      Enter an order directing that Defendants and Relief Defendant provide the Commission immediate and continuing access to their books and records, make an accounting to the Court of all of Defendants' and/or Relief Defendants' assets and liabilities, together with all funds they received from and paid to pool participants and other persons in connection with commodity futures transactions or purported commodity futures transactions, including the names, addresses and telephone numbers of any such persons from whom they received such funds from January 2004 to the date of such accounting, and all disbursements for any purpose whatsoever of funds received from commodity pool participants, including salaries, commissions, fees, loans and other disbursements of money and property of any kind, from January 2004 to and including the date of such accounting;

G.      Enter an order requiring Defendants and Relief Defendant to disgorge to any officer appointed or directed by the Court or directly to the pool participants all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act as described herein, including pre-judgment interest;

H.      An order directing Defendants and Relief Defendant and any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the customers whose funds were received by them as a result of the acts and practices which constituted violations of the Act, as described herein;

I.      Enter an order rescinding all pool participants' contracts for the purchase of units of limited partnership interests and requiring Defendants and Relief Defendant to restore to every participant the full amount of the participant's original investment in the Fund;

J.      Enter an order directing each Defendant to pay a civil monetary penalty in amounts of not more than the higher of (1) triple the monetary gain to Defendants for each violation of the Act or (2) $120,000 for each violation of the Act on or before October 22, 2004, $130,000 for each violation of the Act from October 23, 2004 through October 22, 2008, and $140,000 for each violation of the Act on or after October 23, 2008;

K.      Enter an order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2006); and

L.      Enter an Order providing such other and further relief, as this Court may deem

necessary and appropriate under the circumstances.


                                        Respectfully submitted,

Date:                                   /s/Joseph Konizeski
                                        Senior Trial Attorney
                                        Commodity Futures Trading Commission
                                        525 West Monroe Street, Suite 1100
                                        Chicago, Illinois 60661
                                        (312) 596-0546
                                        jkonizeski@cftc.gov

                                        /s/ William Janulis
                                        Chief Trial Attorney
                                        (312)596-0545
                                        wjanulis@cftc.gov

                                        /s/Rosemary Hollinger
                                        Associate Director
                                        (312) 596-0520
                                        rhollinger@cftc.gov