## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Commodity Futures Trading Commission,**<br>**Plaintiff,** | **Civil Action No: 09-6780** |
| **vs.** | **Judge Norgle** |
| **Raleigh Capital Management, Inc., and**<br>**Richmond H. Hamilton, Jr.,**<br>**Defendants,** | **Magistrate Judge Keys** |
| **Raleigh Fund, LP,**<br>**Relief Defendant.** | |

## ORDER OF PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AGAINST DEFENDANTS RALEIGH CAPITAL MANAGEMENT, INC., RICHMOND H. HAMILTON, JR. and RELIEF DEFENDANT RALEIGH FUND, LP

### I.      INTRODUCTION

On October 28, 2009, the Commodity Futures Trading Commission ("CFTC" or "Commission") filed the complaint in this action against defendants Raleigh Capital Management, Inc. ("RCM") and Richmond H. Hamilton, Jr. ("Hamilton"), and relief defendant Raleigh Fund, L.P. ("Fund") (collectively, "Defendants") seeking injunctive and other equitable relief for violations of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1 *et seq.* (2006), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (subtitled "CFTC Reauthorization Act of 2008" ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008). On November 20, 2009, the Court entered an order of Preliminary Injunction and Other Ancillary Relief against all Defendants.

On April 6, 2011 the Court granted the Commission's Motion for Entry of Permanent Injunction and Other Equitable Relief Against Defendants Raleigh Capital Management, Inc., Richmond H. Hamilton, Jr. and Relief Defendant Raleigh Fund, LP. Rec. Doc. 250. This Court makes the following findings of fact and conclusions of law.

## II.    FINDINGS OF FACT

### A.    Jurisdiction and Venue

1.    This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the CFTC to seek injunctive relief against any person who has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order promulgated thereunder.

2.    Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants transacted business, among other places, in this district, and the acts and practices in violation of the Act have occurred, among other places, within this district.

### B.    Parties to this Order

3.    Plaintiff, Commodity Futures Trading Commission, is an independent federal regulatory agency that is charged by Congress with responsibility for administering and enforcing the provisions of the Act. The CFTC is authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), to bring a civil action to enjoin any act or practice constituting a violation of the Act, to enforce compliance with the Act, and to seek civil penalties.

4.    Defendant Richmond H. Hamilton, Jr. is the sole principal of RCM and is responsible for all facets of RCM's operations. Hamilton resides at 8 Rue Descartes, Rabat – Les Oranges 10000, Morocco. Hamilton is registered with the Commission as an associated person ("AP") of RCM.

5.      Defendant **Raleigh Capital Management, Inc.** is an Illinois corporation and the general partner of **The Raleigh Fund L.P.** RCM conducts business at 1747 North Cleveland, Chicago, IL 60614. RCM trades commodity futures as part of its various investment activities on behalf of the Fund. RCM is registered with the Commission as a commodity pool operator ("CPO").

6.      **Raleigh Fund, LP** is a commodity pool. It was organized in 1987 by Hamilton. RCM is the sole general partner of the Fund, and Hamilton is the sole principal of RCM.

**C.      Defendants' Illegal Scheme**

7.      The Fund is a commodity pool organized in 1987. The Fund currently has approximately 28 participants, many of whom are members of Defendant Hamilton's family. The Fund is administered by RCM, the Fund's general partner, and RCM's sole principal, Hamilton. Hamilton controls RCM, and makes all decisions with respect to the operation and investment decisions of the Fund.

8.      Since May 2004, Hamilton has misappropriated over $1 million from the Fund. First, he withdrew $275,000 from the Fund for his personal expenses, recording it falsely as a "personal loan" from the Fund. Second, he made $300,000 in unauthorized payments to RCM from the Fund which were also used to pay Hamilton's personal expenses, including the purchases of two planes and a car. Third, he took payments of $430,000 in June 2009 under the false pretense of selling real estate to the Fund. Hamilton used these funds to pay off the balance owed on his planes, and deposited the remainder in his personal bank account in Morocco.

9.      The total amount of funds misappropriated by Hamilton comes to $1,005,000.00.

10.     Additionally, Hamilton provided the National Futures Association ("NFA") with documents representing three sham real estate transactions he claimed to have entered into with

the Fund. Hamilton also misrepresented to the NFA, among other things, the extent of his

personal bank accounts, restrictions he imposed on pool participant's requests for return of their

interests in the Raleigh Fund, and his payment of operating expenses for the Fund.

### III.    CONCLUSIONS OF LAW

11.    Prior to being amended by the CRA, Sections 4b(a)(2)(i)-(iii) of the Act, 7 U.S.C.

§§ 6b(a)(2)(i)-(iii) (2006), made it unlawful

> for any person, in or in connection with any order to make, or the making of,
> any contract of sale of any commodity for future delivery, made, or to be
> made, for or on behalf of any other person if such contract for future delivery
> is or may be used for (A) hedging any transaction in interstate commerce in
> such commodity or the products or byproducts thereof, or (B) determining the
> price basis of any transaction in interstate commerce in such commodity, or
> (C) delivering any such commodity sold, shipped, or received in interstate
> commerce for the fulfillment thereof—(i) to cheat or defraud or attempt to
> cheat or defraud such other person; (ii) willfully to make or cause to be made
> to such other person any false report or statement thereof, . . .[or]; (iii)
> willfully to deceive or attempt to deceive such other person by any means
> whatsoever in regard to any such order or contract or disposition or execution
> of any such order or contract, or in regard to any act of agency performed with
> respect to such order or contract for such person.

12.    Similarly, Sections 4b(a)(1)(A)-(C) of the Act as amended by the CRA, to be

codified at 7 U.S.C. §§ 6b(a)(1)(A)-(C), make it unlawful

> for any person, in or in connection with any order to make, or the making of,
> any contract of sale of any commodity in interstate commerce or for future
> delivery that is made, or to be made, on or subject to the rules of a designated
> contract market, for or on behalf of any other person – (A) to cheat or defraud
> or attempt to cheat or defraud the other person; (B) willfully to make or cause
> to be made to the other person any false report or statement, . . . [or] (C)
> willfully to deceive or attempt to deceive the other person by any means
> whatsoever in regard to any order or contract or the disposition or execution
> of any order or contract, or in regard to any act of agency performed, with
> respect to any order or contract for ... the other person.

13.    By misappropriating assets from the Fund, and making material

misrepresentations to pool participants, Hamilton and RCM violated Sections 4b(a)(2)(i) and (iii)

of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006), for conduct before June 18, 2008, and

Sections 4b(a)(1)(A) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C), for conduct on or after June 18, 2009.

14.     Section 4o(1) of the Act, in relevant part, makes it unlawful for a CPO or an AP of a CPO, by using the mails or any means or instrumentality of interstate commerce, directly or indirectly (A) to employ a device, scheme or artifice to defraud pool participants, or (B) to engage in a transaction or course of business that operated as a fraud or deceit upon pool participants. 7 U.S.C. § 6o(1) (2006). This section of the Act applies to all CPOs and their APs whether registered, required to be registered, or exempt from registration.

15.     By misappropriating assets from the Fund, and making material misrepresentations to pool participants through the use of the Internet and other instrumentalities of interstate commerce, Hamilton, as the AP of a CPO, violated Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B) (2006). The foregoing misrepresentations of Hamilton occurred within the scope of his employment with RCM; therefore, RCM is liable for these acts in violation of Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. § 6o(1)(A) and (B) (2006), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2009).

16.     Section 9(a)(4) of the Act prohibits "[a]ny person willfully to falsify, conceal, or cover up by any trick, scheme, or artifice a material fact, make any false, fictitious or fraudulent statements or representations, or make or use any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry to a registered entity, board of trade or futures association designated or registered under th[e] Act acting in furtherance of its official duties under th[e] Act." 7 U.S.C. §13(a)(4).

17.     The NFA is a designated futures association under Section 17 of the Act, 7 U.S.C. § 21.

18.     By submitting sham real estate sales documents to the NFA and misrepresenting the extent of his bank accounts, restrictions imposed on redemptions by pool participants and his payment of operating expenses in communications with the NFA, Hamilton violated Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4) (2006). The foregoing acts and misrepresentations of Hamilton occurred within the scope of his employment with RCM; therefore, RCM is liable for these acts in violation of Section 9(a)(4) of the Act, 7 U.S.C. § 13(a)(4) (2006), pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2006), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2009).

19.     Pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), and Regulation 143.8(a)(1)(i), 17 C.F.R. § 143.8(a)(1)(i) (2011), this Court may impose an order directing Defendants, jointly and severally, to pay a civil monetary penalty ("CMP"), to be assessed by the Court, in amounts of not more than the greater of (1) triple the monetary gain to Defendants for each violation of the Act, the Act, as amended by the CRA, and Regulations; or (2) $130,000 for each violation of the Act, the Act, as amended by the CRA, and Regulations occurring from October 23, 2004 through October 22, 2008, and $140,000 for each violation of the Act, the Act, as amended by the CRA, and Regulations occurring on or after October 23, 2008.

## IV.    PERMANENT INJUNCTION

20.     Hamilton and RCM engaged in acts and practices that violate Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006), for conduct before June 18, 2008, Sections 4b(a)(1)(A) and (C) of the Act, as amended by the CRA, to be codified at 7 U.S.C. §§ 6b(a)(1)(A) and (C), for conduct on or after June 18, 2009, Sections 4o(1)(A) and 4o(1)(B) of the Act, 7 U.S.C. §§ 6o(1)(A) and 6o(1)(B), and Section 9(a)(4) of the Act, 7 U.S.C. §13(a)(4).

6

Unless restrained and enjoined by this Court, there is a reasonable likelihood that Hamilton and

RCM will continue to engage in the acts and practices alleged in the Complaint and in similar

acts and practices in violation of the Act. Other ancillary statutory and equitable relief is

imposed to carry out the goals of the Act.

### IT IS HEREBY ORDERED THAT:

21. Hamilton and RCM are prohibited and permanently enjoined from directly or

indirectly:

    a)     cheating or defrauding, or attempting to cheat, or defraud other persons in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity futures transaction, in violation of Section 4b(a)(1)(A) of the Act as amended by the CRA, to be codified as 7 U.S.C. § 6b(a)(1)(A);

    b)     willfully deceiving or attempting to deceive by any means whatsoever other persons by any means whatsoever in regard to any order or contract, or in regard to any act of agency performed with respect to any order or contract, in violation of Section 4b(a)(1)(C) of the Act as amended by the CRA, to be codified as7 U.S.C. § 6b(a)(1)(C);

    c)     employing any device, scheme or artifice to defraud any client or participant or prospective client or participant or engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon any participant or prospective participant by use of the mails or any means or instrumentality of interstate commerce, in violation of Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A) and (B) (2006); and,

    d)     falsifying, concealing, or covering up by any trick, scheme, or artifice a material fact, making any false, fictitious or fraudulent statements or representations, or making or using any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry to a registered entity, board of trade or futures association designated or registered under the Act acting in furtherance of its official duties under the Act, in violation of Section Section 9(a)(4) of the Act, 7 U.S.C. §13(a)(4) (2006).

22. Hamilton and RCM are permanently restrained, enjoined and prohibited from

directly or indirectly:

a. Trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006);

b. Entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2009)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act as amended by the CRA) ("forex contracts") for their own personal account, and for any account in which they have a direct or indirect interest;

c. Having any commodity futures, options of commodity futures, commodity options, and/or forex contracts traded on his behalf;

d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options of commodity futures, commodity options, and/or forex contracts;

f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9) (2009); and

g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2009)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9) (2009);

23. The injunctive provisions of this Order shall be binding upon: Hamilton and RCM; any other persons insofar as they are acting in the capacity of an agent, servant, employee, successor, assign, and attorney of either Hamilton or RCM; and/or upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with either Hamilton or RCM.

## V.    RESTITUTION, CIVIL MONETARY PENALTIES, AND OTHER STATUTORY OR EQUITABLE RELIEF

**IT IS HEREBY FURTHER ORDERED THAT:**

### A.    Restitution

24.    Upon entry of this Order, Hamilton is liable for and a judgment is entered against him for restitution in the total amount of $1,005,000.00.

25.    Hamilton shall pay this $1,005,000.00 to the Court Appointed Receiver, Deborah Thorne, Esq., Barnes and Thornburg, LLP, One North Wacker, Suite 4400, Chicago, IL 60606-2833. The Receiver shall distribute such payments to the investors in the Raleigh Fund.

### B.    Civil Monetary Penalties

26.    Upon satisfaction of the restitution entered above, Hamilton is liable for and a judgment is entered against him for a civil monetary penalty in the total amount of $3,015,000.00, plus post-judgment interest.

27.    In determining the amount of the CMP to be paid by the Defendants, the Court has considered the egregiousness, duration, and scope of the fraud and violations of the Act, the Act, as amended by the CRA, and Regulations. A proper showing having been made, Defendants are hereby assessed, jointly and severally, a total CMP in the amount of $3,015,000, plus post-judgment interest. Defendants shall pay this CMP by ninety (90) days from the date of entry of this Consent Order. Post-judgment interest shall accrue beginning on the eleventh (11th) day after the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

28.    Hamilton shall pay this civil monetary penalty by making electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If

payment is to be made other than by electronic funds transfer, the payment shall be made

payable to the Commodity Futures Trading Commission and sent to the address below:

> Commodity Futures Trading Commission
> Division of Enforcement
> ATTN: Marie Bateman – AMZ-300
> DOT/FZZ/MMAC
> 6500 S. MacArthur Blvd.
> Oklahoma City, OK 73169
> Telephone: (405) 954-6569

If payment by electronic transfer is chosen, the Defendant shall contact Marie Bateman or her

successor at the address above to receive payment instructions and shall fully comply with those

instructions. The Defendant shall accompany payment of the civil monetary penalty with a

cover letter that identifies the Defendant and the name and docket number of this proceeding.

The Defendant shall simultaneously transmit a copy of the cover letter and the form of payment

to: Director, Division of Enforcement, Commodity Futures Trading Commission, Three

Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581; and Chief, Office of

Cooperative Enforcement, Division of Enforcement, at the same address.

### Provisions Related to Monetary Sanctions

29.    Satisfaction: Upon full satisfaction of the Defendants' CMP obligations,

satisfaction of judgment will be entered as to the Defendants.

30.    Partial Satisfaction: Any acceptance by the CFTC of partial payment of the

restitution obligation or CMP obligation ordered in this Consent Order shall not be deemed a

waiver of the Defendants' requirement to make further payments pursuant to this Consent Order,

or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

**OTHER PROVISIONS**

31.    Notices:  Absent future notification in writing of a new address, all notices

required to be given by any provision in this Order shall be sent certified mail, return receipt

requested, as follows:

> Notice to Plaintiff Commission:
> Director of the Division of Enforcement
> Commodity Futures Trading Commission
> 1155 21st Street NW, Washington, DC 20581
>
> Notice to Defendant Hamilton:
> Stephen L. Richards, Esq.
> 651 W. Washington, Suite 205
> Chicago, IL 60661
>
> Notice to Defendant RCM and the Fund
> Deborah L. Thorne, Esq.
> Barnes and Thornburg, LLP
> One North Wacker Drive,
> Suite 4400
> Chicago, IL 60606

**IT IS SO ORDERED** on this _12_ day of _May_____, 20 _11_.

_Charles R. Norgle_

**UNITED STATES DISTRICT JUDGE**

11